# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

WILLIAM MURPHY,                    ) 1:02-cv-05456-OWW-TAG HC
                                   )
            Petitioner,            ) REPORT AND RECOMMENDATION
                                   ) TO DENY PETITION FOR WRIT OF
      v.                           ) HABEAS CORPUS
                                   )
ANA RAMIREZ-PALMER,                ) (Doc. 1)
                                   )
            Respondent.            )
_____     )

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections serving a sentence of 25 years to life pursuant to a judgment of the Superior Court of California, County of Stanislaus (the "Superior Court"). On September 6, 1995, Petitioner was convicted by jury of petty theft with three prior convictions. (Cal. Pen. Code § 666). The jury also found that each of Petitioner's prior convictions were for first degree burglary, and qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). On October 6, 1995, Petitioner was sentenced to a term of 25 years to life with the possibility of parole. (Volume 1, Clerk's Transcript on Appeal ("1 CT"), 171-172).

On November 15, 1995, Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), raising the following issues regarding the Three Strikes law:

1. [Petitioner's ] 25 years to life sentence is cruel and unusual punishment under the Federal and California Constitutions.

2. Ex parte Boatwright [216 Cal. 677 (1932)] prohibits the use of petty theft as a new felony conviction.

3. The matter should be remanded for resentencing because the trial court did not know the scope of its discretion to dismiss prior felony conviction allegations.

4. The prosecution abused its statutory discretion by failing to move to strike [Petitioner's] prior convictions.

5. The Three Strikes law was not legally in effect at the time of the charged offense.

6. The Three Strikes law does not apply to [Petitioner] because he did not have adequate notice that the law would apply to "strikes" occurring before its enactment.

7. The Three Strikes law  is unconstitutionally vague and deprives [Petitioner] of his constitutional rights.

(Doc. 20, Exh. 2, pp. ii-iv, 49, 81, 87, 91, 99, 102, 110).

On May 21, 1997, Petitioner filed a petition for writ of habeas corpus with the 5th DCA, claiming ineffective assistance of trial counsel. (Doc. 20, Exh. 5). The first appeal and habeas petition were consolidated on May 29, 1997.  (Doc. 20, Exh. 6).

In an unpublished opinion filed on June 4, 1998, the 5th DCA remanded the case to the Superior Court with instructions to decide whether to exercise discretion to vacate one or more of the jury's strike findings.  (2 CT 2, 26). The 5th DCA declined to consider whether Petitioner's sentence constituted cruel and unusual punishment, finding the issue premature "since the trial court must consider such matters when it resentences [Petitioner]."  (2 CT 26).  The 5th DCA affirmed the judgment in all other respects, and denied the petition for writ of habeas corpus.  (Id.).

On July 14, 1998, Petitioner filed a petition for review in the California Supreme Court. (Doc. 20. Exh. 10, pp. 1-2).  The petition for review was summarily denied on September 18, 1998. (Doc. 20, Exh. 11).  On remand on December 16, 1998, the Superior Court denied Petitioner's motion to strike one or more of his prior convictions. (2 CT 88-89).

On September 30, 1999, Petitioner filed a direct appeal after remand (the "second appeal"), raising the following grounds for relief:

1. The [Superior Court] abused its discretion in refusing to strike [Petitioner's] prior convictions;

2.   California's   multiple use of the same prior convictions to twice increase punishment for a single new criminal act violates the Double Jeopardy Cause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and

3. Based upon an objective examination of the relevant factors, the sentence of 25 years to life constitutes cruel and unusual punishment, as applied in this case under the Federal and California Constitutions.

(Doc. 20, Exh. 12, pp. I, 10, 25, 40, Exh. 14, p.4).

In a partially published opinion filed April 10, 2001,[1] the 5th DCA affirmed the Superior Court's judgment, concluding that the trial court did not abuse its discretion by refusing to vacate the jury's strike findings and that Petitioner's sentence was neither cruel nor unusual punishment under the Eighth Amendment. (Doc. 20, Exh. 15, p. 2).  The 5th DCA also concluded that its limited remand precluded Petitioner from  challenging his sentence on any new or different ground.  (Id.).  In the published portion of its opinion, the 5th DCA barred review of Petitioner's double jeopardy and due process claim as untimely, because it could have been, but was not, raised in Petitioner's first appeal. (Id. at 9-12).

On May 16, 2001, Petitioner filed a petition for review in the California Supreme Court, which included the following questions:

". . . .

3. Does "double-counting" prior felony convictions in order to twice and thrice increase the punishment for the current crime offend the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments and the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and/or article I, sections 15, 17 and 24, of the California Constitution?

4. Does [Petitioner's]  sentence of 25 years to life for committing petty theft with a prior theft conviction violate the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or the state's constitutional prohibition against cruel and /or unusual punishment found in article I, sections 17 and 24 even though he has been previously convicted of three residential burglaries?"

(Doc. 20, Exh. 18, pp. 1-2). The petition for review was summarily denied on July 18, 2001. (Doc. 20, Exh. 19).  On October 11, 2001, Petitioner filed a petition for writ of certiorari in the United States Supreme Court. (Doc. 25, p. 1, lines 27-28).  The petition was denied on December 10, 2001. (Doc. 20, Exh. 19).

---

[1] People v. Murphy, 88 Cal.App.4th 392 (2001).

1    The instant petition was filed on April 24, 2002.  (Doc. 1).   Respondent's answer was filed

2    on November 6, 2002.  (Doc. 20).   Petitioner's traverse was filed on January 30, 2003.  (Doc. 25)

3                          **FACTUAL BACKGROUND**

4    The Court adopts the facts as summarized by the 5th DCA, in relevant part, as follows:

5        On the afternoon of August 18, 1994, James Watts, a loss prevention specialist for
       Montgomery Ward's Department Store, was observing shoppers when he noticed
6        [Petitioner], who seemed to be looking around or "rubbernecking" while he was
       shopping.  Watts left the floor and moved to his office in order to observe him on the
7        store monitors.  He watched [Petitioner] for about 30 minutes as he moved around the
       store.
8
         [Petitioner] took several pairs of men's pants and jackets to the fitting room area.  He
9        concealed some of the items by a shelf next to the women's dressing room, then
       entered the men's fitting room with three pairs of slacks on hangars.  When he came
10       out of the fitting room, [Petitioner] returned the three pairs of slacks to the rack and
       grabbed more clothing.  He went back to the fitting room areas where he stood and
11       looked around as if he was looking for someone, yet he refused assistance when asked
       by a sales clerk.  He again walked into the fitting room with three pairs of slacks on
12       hangars, but came out within thirty seconds and returned the slacks to the rack.  He
       walked back to retrieve the items he earlier had concealed.
13
         [Petitioner] walked through the maternity department and, after browsing for a few
14       minutes, he split apart the clothing on a circular rack and stepped into the rack so that
       he was partially concealed.  He emerged from the rack carrying a large Montgomery
15       Wards bag full of merchandise and two jackets draped over the top of the bag.  After
       browsing through several departments, he opened a white plastic Save Mart bag into
16       which he placed the jackets.  He then left the store.

17       Watts approached [Petitioner] and identified himself as store security. [Petitioner]
       bolted, but Watts grabbed his shirt and took him to the office where they waited for
18       the police.  Watts found five pairs of slacks and two wind-breakers belonging to
       Wards in the bags, but no receipts.  When Officer Adam Christianson arrived, Watts
19       described what he had observed and played the video tapes of [Petitioner's] actions.
       [Fn. omitted.] [Petitioner] provided a false name to Watts and again to Officer
20       Christianson, but later admitted his true name as reflected on Department of Motor
       Vehicle documents found by Christianson in his fanny pack.
21
     (2 CT 3-4, Doc. 20, Exh. 9, pp. 2-3).[2]
22
                              **DISCUSSION**
23
     **I. Jurisdiction.**
24
     _____Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant
25

26   _____

27       [2] Petitioner alleges that his current petty theft conviction is for leaving the Montgomery Ward
     store "without paying for retail merchandise with a retail value of $261.97 in [P]etitioner's possession."
28   (Doc. 1, p. 5a).

1   to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

2   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

3   375 n. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as

4   guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus

5   County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a);

6   2241(d).  Accordingly, the Court has jurisdiction over this action.

7          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

8   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

9   Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586

10  (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d

11  751, 769 (5th Cir. 1996)), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other

12  grounds by Lindh, 521 U.S. 320, 117 S.Ct. 2059 (holding the AEDPA only applicable to cases filed

13  after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is

14  therefore governed by the AEDPA.

15  **II.  Legal Standard of Review.**

16         Under the AEDPA, a petition for writ of habeas corpus will not be granted unless the

17  adjudication of a state prisoner's claim "resulted in a decision that was contrary to, or involved an

18  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

19  the United States" or  "resulted in a decision that was based on an unreasonable determination of the

20  facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d);

21  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003); Williams v. Taylor, 529 U.S. at 413,

22  120 S.Ct. 1495; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).

23         The Supreme Court explains that

24  [A] state court decision is "contrary to" our clearly established [Supreme Court]
    precedent if the state court it applies a rule that contradicts the governing law set forth
25  in [Supreme Court] cases, or "if the state court confronts a set of facts that are
    materially indistinguishable from a [Supreme Court] decision and nevertheless arrives
26  at a result different from [Supreme Court] precedent.
    . . . .
27
    A state court decision involves an "unreasonable application" of Supreme Court
28  precedent if the state court identifies the correct governing legal principle from

[Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case.

. . . .

The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.

Lockyer v. Andrade, 538 U.S. at 73, 75 (citations omitted).  Any factual determinations made by the state court are presumed correct unless rebutted  by clear and convincing evidence.  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029 (2003); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).

To determine whether a state court decision is contrary to or an unreasonable application of federal law, the federal habeas court looks to the "last reasoned decision of [a] state court as the basis of the state court's judgment." Powell v. Galaza, 328 F. 3d 558, 563 (9th Cir. 2003) (quoting Franklin v. Johnson, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)).  However, when the state court provides no reasoning for its decision, the federal court independently reviews the record to determine whether under the AEDPA,  the state court properly denied habeas relief, focusing on whether the state court's resolution of the petitioner's claim was an unreasonable application of clearly established federal law. See Greene v. Lambert, 288 F. 3d 1081, 1088-89 (9th Cir. 2002); Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2002).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

**III.  Review of Petitioner's Claims.**

The instant petition alleges the following as grounds for relief:

**Ground One**          **"Double-counting" prior felony convictions to twice or thrice increase punishment in the same proceeding offends the Due Process and Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution."**

**Ground Two**          **"Petitioner's sentence of 25 years to life for petty theft violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution, even though he was previously convicted of three residential burglaries."**

**A. Ground One is Not Procedurally Barred.**

1. Introduction.

In Ground One, Petitioner contends that the trial court's dual use of a prior burglary conviction both to elevate his petty theft to a felony and to invoke the sentencing provisions of California's Three Strikes law violated constitutional due process and double jeopardy principles. In his answer, Respondent, citing the state procedural bar set forth in Ex parte Dixon, 41 Cal.2d 756, 759 (1953), raises an affirmative defense that Petitioner's claim is procedurally barred from federal habeas review because it was not raised in Petitioner's first appeal. (Doc. 5, p. 8).

A federal court will not review claims in a petition for writ of habeas corpus when the state court denied relief on those claims based on a state procedural law that is both independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S. Ct. 2590 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991). "A district court properly refuses to reach the merits of a habeas petition if the petitioner defaults on the particular state's procedural requirements and is unable to demonstrate cause and prejudice or a fundamental miscarriage of justice." Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000). This doctrine of procedural default is based on concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

The mere occurrence of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus. For the procedural default doctrine to apply and thereby bar federal review, the state court must also "'clearly and expressly' state that its judgment rested on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 U.S. 1038 (1989), citing Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633 (1985) (quoting Michigan v. Long, 463 U.S. 1032, 1041, 103 S.Ct. 3469 (1983)).

As the following discussion explains, the Court rejects Respondent's affirmative defense of a procedural bar for two reasons. First, the procedural bar used by the 5th DCA in this case was not, as Respondent has asserted, the Dixon rule, but instead constitutes a new procedural bar. Second, this new procedural bar, applied by the 5th DCA for the first time in Petitioner's case, was neither firmly established nor consistently applied at the time the state court defaulted Petitioner. Accordingly, the Court will reach the merits of Petitioner's claim and deny Ground One on its merits.

2.  <u>The Nature Of The State Procedural Bar</u>.

The first step in deciding whether there has been a procedural default is to determine whether the state court clearly and expressly denied relief on a state procedural ground. Here, Petitioner pursued a direct appeal of his conviction and sentence.  The 5th DCA, in the first appeal, remanded the case to the trial court for the limited purpose of deciding whether to exercise its discretion under <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497 (1996), to dismiss one or more of the "strike" prior convictions.  (Doc. 20, Exh. 15, p. 2).  In light of the remand, the 5th DCA rejected as premature Petitioner's claim that his sentence was cruel and unusual.  (<u>Id.</u>).  However, in all other respects, the court affirmed the judgment.  (<u>Id.</u>).

On remand, Petitioner argued that the trial court should exercise its discretion under <u>Romero</u>, and also argued that the imposition of a "three strikes" sentence would be cruel and unusual.  (<u>Id.</u>). The trial court rejected both arguments, declined to exercise its discretion, and returned Petitioner to prison to serve out the remainder of his sentence.  (<u>Id.</u>).  When Petitioner appealed the trial court's rulings on remand, he included the contention encompassed by Ground One, i.e., that "[d]ouble-counting" prior felony convictions to twice or thrice increase punishment in the same proceeding offends the Due Process and Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution."  (Doc. 1, p. 5). [3]

In the second appeal, "[g]iven the limited nature of the proceedings from which [Petitioner] appeals...," the 5th DCA "asked the parties to submit supplemental briefs on the question of whether [Petitioner] is precluded from raising any issue other than the court's refusal to exercise its <u>Romero</u> discretion." (Doc. 20, Exh. 15, p. 9).  Both sides treated the issue as a question of "waiver."  (<u>Id.</u>). Petitioner claimed that because his sentence was "unauthorized" under <u>Romero</u>, the waiver rule was inapplicable.  Alternatively, Petitioner argued ineffective assistance of counsel for failing to raise the issue earlier.  (<u>Id.</u>).  The Attorney General, on the other hand, relied upon <u>People v. Senior</u>,

---

[3]  Petitioner's opening brief in the second appeal contends that "California's multiple use of the same prior convictions to twice increase punishment for a single new criminal act violates the Double Jeopardy Cause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  (Doc. 20, Exh. 12, p. 25).

33 Cal.App. 4th 531 (1995), which held that "when a criminal defendant could have raised an issue in a previous appeal but did not do so, the defendant may be deemed to have waived the right to raise the issue in a subsequent appeal, absent a showing of good cause or justification for the delay." Id. at 533.

In Senior, following the defendant's convictions on multiple sexual assault and kidnapping counts, defendant appealed, raising various issues, but asserting only one instance of sentencing error, i.e., that the trial court, in relying upon the mandatory sentencing procedures of California Penal Code § 667.6(d), had failed to state reasons for imposing consecutive terms as to counts nine and ten. Senior, 33 Cal.App. 4th at 533. The Court of Appeal affirmed the defendant's convictions, but remanded for resentencing of the consecutive terms. Id. On remand, the trial court re-sentenced the defendant and he once again appealed, challenging the consecutive sentences as to counts nine and ten. Id. at 534. Once again, the Court of Appeal found the appeal meritorious, and remanded for another re-sentencing. Id. In so doing, the Court of Appeal made clear that the trial court could restructure the sentence "subject to the sole restriction that the aggregate term could not exceed the original [ ] sentence." Id.

On his third appeal, Senior challenged the trial court's reliance upon Penal Code § 667.6(d), but this time as it was applied to the sentences for counts three, five, and six. Id. The Attorney General argued that the defendant's claims in the third appeal should be barred as waived, because he could have raised the issues in either of his first two appeals. Id. In addressing the issue, the Court of Appeal framed the question as follows:

> [T]hough California law prohibits a direct attack upon a conviction in a second appeal after a limited remand for resentencing or other posttrial procedures, we are not aware of any statutory or decisional authority barring a defendant from raising a new substantive issue which, though technically encompassed in the appellate court's remand order, could have been raised in the previous appeal.

Id. at 535 (citations omitted).

Analyzing the facts as "a corollary of the more expansive rule recognized under federal law requiring all available arguments to be raised in the initial appeal from the judgment," the Senior court went on to review the waiver doctrine as it had been applied in those circumstances. Id. at 535-536. In so doing, the court noted the analogy to a procedural bar in the habeas context, as

1   represented by cases following the <u>Dixon</u> rule. <u>Id.</u> at 537.  Concluding that the same policy

2   considerations of finality of judgments, protection of "scarce judicial resources," and preventing

3   piecemeal litigation applied equally in the context of an appeal from remand as they did in habeas

4   cases, the Court of Appeal held that the defendant's issues had been waived. <u>Id.</u> at 538.  However,

5   the court indicated that its holding should be "narrowly applied" only to cases where the issue had

6   been ripe for decision at the time of the previous appeal, there had been no significant change in the

7   underlying facts or applicable law, and the defendant offered no reasonable justification for the

8   delay. <u>Id.</u>

9          In this case, the 5th DCA expressly rejected the rationale of <u>People v. Senior</u>, drawing a fine

10  distinction between cases, represented by <u>Senior</u>, in which the "contested sentencing issue was

11  'technically encompassed' within the remand order and so could have been raised but was not," and

12  Petitioner's case, where the issue raised in Ground One was never before the remand court because it

13  was outside of the narrow parameters of the remand order.   (Doc. 20, Exh. 15, p. 10).   Thus, the 5th

14  DCA reasoned, Petitioner was precluded from raising his dual use argument not, as in <u>Senior</u>,

15  because of the waiver doctrine, but "because the time in which to make it has passed."  <u>Id.</u>

16         In holding that the issue on appeal exceeded the scope of the remand order, the 5th DCA

17  explained that it had remanded the case to the Superior Court:

18         for the sole purpose of deciding whether to exercise its discretion . . . to vacate the
           jury's strike findings. . . .We affirmed the judgment in all other respects. *We did not*
19         *reverse [Petitioner's] sentence.  On remand, the court refused to vacate the jury's*
           *strike findings and it returned [Petitioner] to the custody of the Department of*
20         *Corrections to serve out the remainder of his existing prison term.  It did not*
           *resentence him.*
21
    (Doc. 20, Exh. 15, p. 9) (emphasis supplied).
22

23         The 5th DCA explained the effect of raising an issue outside the scope of the remand as follows:

24         [I]n an appeal following a limited remand, the scope of the issues before the court is
           determined by the remand order. (<u>People v. Deere</u> (1991) 53 Cal. 3d 705), 713; <u>People</u>
25         <u>v. Webb</u> (1986) 186 Cal. App. 3d 401, 410).  Since the [Superior Court] in this case
           chose not to vacate a strike finding, the matter of [Petitioner's] sentence was not again
26         before it.  Therefore, [Petitioner] cannot now argue improper dual use of his prior
           convictions.  The time for him to have raised this objection was during his first
27         appeal."

28  (Doc. 20, Exh. 15, pp. 11-12).

1   Based on the foregoing, several points are apparent.  First, the 5th DCA was not applying a

2   Dixon bar, although, arguably, the procedural bar applied here was analogous in some limited

3   respects to that applied in Dixon.  However, the Dixon bar occurs when a petitioner raises in a

4   habeas corpus case an issue he could have, but did not, raise in a state appeal.  Dixon, 41 Cal.2d at

5   759.  The purpose of the bar is to prevent having habeas corpus proceedings become a substitute for

6   state court appeals.  Id. at 761.  The Dixon court's pragmatic view was that it was improper to permit

7   habeas corpus to raise alleged errors involving factual issues related to a denial of constitutional

8   rights after expiration of the time for an appeal because evidence may have disappeared and

9   witnesses may have become unavailable.  Id.

10   Here, no state habeas proceedings are involved; the contested issue was raised in an appeal

11   after remand in the direct appeal from Petitioner's conviction and sentence.  Thus, the policy behind

12   Dixon, i.e., preventing habeas from becoming a surrogate appeal, does not even arise here.

13   Moreover, the issue involved, i.e., double-counting of prior convictions, is not fact-dependent as was

14   the issue in dispute in Dixon; therefore, Dixon's concern about witnesses becoming unavailable and

15   evidence disappearing simply does not apply here.  Hence, although superficially the bar applied by

16   the 5th DCA in this case resembles the Dixon bar, upon closer scrutiny, it possesses neither the

17   procedural characteristics nor the public policy rationale of a true Dixon bar.

18   Second, the bar applied here was itself expressly dependent upon the unique way that

19   Romero remands are conducted in California: when the trial court chooses not to exercise Romero

20   discretion, nothing about the sentence is changed in any respect and the defendant is not

21   "resentenced," but instead is simply "returned to prison" with his sentence undisturbed.  (Doc. 20,

22   Exh. 15, p. 2).  The 5th DCA's legal justification for the instant bar is therefore legally distinct from

23   the bar imposed in Senior and related cases, which were premised upon waiver, rather than, as here,

24   timeliness.  As well, it differs from other, older cases prohibiting new issues from being raised in a

25   subsequent appeal, based on the doctrine of "law of the case."  E.g., People v. Durbin, 64 Cal.2d 474,

26   477  (1966); People v. Smyers, 2 Cal.App. 3d 666, 668 (1969).  Indeed, because it is tailored so

27   precisely to the contours of a Romero remand, it appears to this Court that Petitioner's own appeal

28   represents the first published case in California to articulate this particular procedural bar premised

1   upon "untimeliness" as a justification for barring a claim on appeal after a remand.

2       This conclusion is supported not only by the fact that the 5th DCA chose to publish that

3   portion of the opinion addressing the procedural bar, thus suggesting that the issue was novel, but

4   also by the fact that the 5th DCA did not cite any case as direct authority for its holding.  The 5th DCA

5   did cite People v. Deere, 53 Cal.3d 705 (1991), and People v. Webb, 186 Cal. App. 3d 401 (1986),

6   for the general principle that "[i]n an appeal following a limited remand, the scope of the issues

7   before the court is determined by the remand order."  (Doc. 20, Exh. 15, p. 11).  However, neither

8   case dealt with the type of bar described by the 5th DCA here.  Deere, using a "law of the case"

9   rationale, held that where the judgment had been reversed as to the penalty only, the defendant could

10   not raise guilt phase issues in the appeal after remand.  Deere, 53 Cal.3d at 713.  Similarly, Webb

11   held that, where the appellate court affirmed the conviction but remanded for resentencing, the

12   defendant could not directly attack his conviction in the appeal after remand.  Webb, 186 Cal.App.

13   3d at 410.

14       By contrast, in Petitioner's appeal, the issue procedurally barred involved not the guilt phase,

15   but Petitioner's sentence, which, at first blush, would seem to have been within the ambit of the

16   remand order and in line with the reasoning of People v. Senior, 33 Cal.App. 4th 531 (1995).

17   However, because the 5th DCA went on to distinguish between sentencing remands that anticipated

18   resentencing, such as in Senior, and those, such as Petitioner's, in which re-sentencing was merely a

19   possibility that was never realized, neither Deere nor Webb can truly be considered as legal

20   provenance for the bar employed in Petitioner's appeal. For all of these reasons, the Court concludes

21   that the procedural bar used by the 5th DCA to bar Petitioner's Ground One in his state court appeal

22   was a unique bar first articulated in Petitioner's appeal itself.

23       On July 18, 2001, the California Supreme Court denied Petitioner's petition for review,

24   without citation or comment.  (Doc. 20, Exh. 19). By its silent order,  the California Supreme Court

25   is deemed to have denied Petitioner's claims for the same reasons stated in the 5th DCA's opinion.

26   Ylst, 501 U.S. at  801, 803 (explaining that "Where there has been one reasoned state judgment

27   rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

28   claim rest upon the same ground.").  Thus, the California Supreme Court is deemed to have denied

1   Petitioner's Ground One claim on the same state law procedural grounds as did the 5th DCA.  The

2   next step, therefore, is to determine whether this particular state procedural bar is both independent

3   of federal law and adequate to support the judgment. Only if both prerequisites are met is habeas

4   relief on Petitioner's Ground One procedurally barred.

5       3.  Adequacy.

6       A state procedural rule on which the state relies to establish a procedural default must be

7   "adequate to support the judgment." Coleman, 501 U.S. at 735.  A state procedural law is adequate

8   to support the judgment when it is "well-established and consistently applied." Bennett, 322 F.3d at

9   582 (citing Poland v. Stewart, 169 F. 3d 573, 577 (9th Cir. 1999)).  The question of whether a state

10  procedural default rule is well-established and  consistently applied is determined *when the actual*

11  *default occurs*, not when the state court applies its procedural rule to bar the petitioner's claim.

12  Fields v. Calderon, 125 F.3d 757, 760-61 (9th Cir. 1997); Calderon v. U.S. Dist. Ct. For E.D. of Cal.,

13  103 F.3d 72, 75 (9th Cir. 1996), cert. denied, 521 U.S. 1129, 117 S.Ct. 2532 (1997) (relevant time to

14  assess application of the Dixon rule is when petitioner "had an opportunity to raise the claims on

15  direct appeal").  Here, the relevant date is September 23, 1996, the date when Petitioner filed his

16  opening brief in the first appeal. (Doc. 5, Exh. 2). Thus, the appropriate inquiry is whether the

17  procedural bar applied by the 5th DCA in this case was both "well-established" and "consistently

18  applied" as of September 23, 1996.

19      Given the foregoing discussion, it is evident that the procedural bar applied by the 5th DCA

20  was not well-established as of September 23, 1996.  As indicated, it appears to the Court that this bar

21  was applied for the first time in Petitioner's own appeal to the 5th DCA, a decision announced on

22  April 10, 2001, more than four years *after* Petitioner's default occurred.  The Court has been able to

23  find no cases, prior to Petitioner's own appeal, that apply precisely the same procedural bar as

24  described by the 5th DCA in its opinion in this case.  However, even assuming, arguendo, that the bar

25  had been applied at an earlier date, because the bar is entirely dependent upon the mechanics of a

26  Romero remand for its application, it could not have arisen *prior* to the decision in Romero itself,

27  which was decided on June 20, 1996.  The Court concludes that it is entirely implausible that, within

28  the space of a mere three months, i.e., from June 20, 1996, until September 23, 1996, this particular

procedural bar could have become "well-established" in California.  This is especially true in light of the absence of cases applying this particular procedural bar prior to the 5th DCA's decision in this case in 2001.  Accordingly, the Court concludes that this procedural bar was not "well established."

Because the Court so concludes, it need not consider in any depth whether the bar had been "consistently applied" at the time of Petitioner's procedural default on September 23, 1996. Nevertheless, given the fact that the 5th DCA's decision of April 10, 2001 appears to have established the procedural bar in the first instance, it is self-evident that the bar could not be considered "consistently applied" because the bar was not established until *after* the default occurred. Accordingly, the Court concludes that the state procedural bar was neither "well-established" nor "consistently applied," and hence was not  "adequate" for purposes of foreclosing the Court's review of the merits of Petitioner's Ground One.  Accordingly, Ground One is not procedurally barred.

**Ground One  "Double-counting" prior felony convictions to twice or thrice increase punishment in the same proceeding offends the Due Process and Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.**

**A. Review.**

In Ground One, Petitioner contends that the use of a prior conviction both to elevate his misdemeanor petty theft to a felony and to invoke the sentencing provisions of California's Three Strikes law violated constitutional due process and double jeopardy.  The last reasoned state court decision on this claim was made by the 5th DCA, when it denied relief based on a state procedural rule.  However, in a footnote, the 5th DCA also stated "Were we to consider [Petitioner's] dual use argument, we would conclude it is meritless for the same reasons we rejected it in People v. White Eagle (1996) 48 Cal.App. 4th 1511, 1519-1520." (Doc. 20, Exh. 15, p. 12 n.3).

Although the 5th DCA refused to consider Petitioner's Ground One claim for procedural reasons, footnote three of the 5th DCA's decision explained why it would have denied the claim on the merits if it had decided the claim on the merits. Under these circumstances, it would be disingenuous to evaluate Petitioner's  claim entirely as if the state court provided no reasoning for its

1    decision.[4]  Therefore, the Court will  consider this claim under both standards, i.e., the Court will

2    independently review the record to determine whether denial of this claim by the California Supreme

3    Court was contrary to or an unreasonable application of clearly established Supreme Court authority,

4    and the Court will also analyze the claim under the AEDPA's traditional deferential standard to

5    determine whether the 5th DCA's "footnote three reason" to reject this claim was contrary to or

6    involved an unreasonable application of clearly established Supreme Court authority.  28 U.S.C.

7    § 2254 (d)(1).

8         **B.  California Penal Code § 666.**

9         Under California law, petty theft is theft of property valued at or less than $400.  (Cal. Pen.

10   Code § 488).  Petty theft ordinarily is a misdemeanor, punishable by fine or imprisonment in the

11   county jail not exceeding six months, or both.  (Cal. Pen. Code § 490).  However, petty theft

12   becomes a felony-misdemeanor or "wobbler" [5] if the defendant has been previously convicted of

13   petty theft, grand theft, auto theft, burglary, carjacking, robbery or a felony receiving stolen property,

14   and either served a term in a penal institution, or was imprisoned as a condition of probation. (Cal.

15   Pen. Code § 666).  Petty theft with a prior conviction becomes a felony if the defendant is sentenced

16   to prison, and once the crime becomes a felony, the defendant is subject to sentencing under the

17   Three Strikes law.  See People v. Terry, 47 Cal. App. 4th 329, 331, 332 (1996); see also People v.

18   Stevens, 48 Cal. App. 4th 982, 987 (1996).

19        In Count II of an Information filed December 1, 1994, Petitioner was charged with petty theft

20   with three prior burglary felonies under Penal Code § 666, and three serious prior felonies under the

21   Three Strikes law ( Cal. Pen. Code §§ 667 (d) and 667.5(d) (prior prison term enhancement)).  (1 CT

22   23-29, 51).  The jury found Petitioner guilty of petty theft with three prior burglary felonies, and

23

24        [4] When the state court provides no reasoning for its  decision, a federal habeas court should
25   conduct an independent review of the record to determine whether under the AEDPA, the state court
     properly denied habeas relief. See Greene v. Lambert, 288 F. 3d 1091, 1088-89 (9th Cir. 2002).  The
26   federal habeas court's review focuses on whether under Supreme Court precedent, the state court's
     resolution of petitioner's claims was contrary to, or involved an unreasonable application of, clearly
27   established federal law. Id.; Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

28        [5] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony. See
     Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004)

1    found that the three serious prior felony allegations were true.  (1 CT 117-121).   The trial court

2    found the prior prison term allegation to be true. (1 CT 116).   At sentencing, Petitioner moved for an

3    order striking one or more of his prior convictions.  The Superior Court denied the motion and

4    imposed a third strike sentence of 25 years to life.

5         **C.  Double Jeopardy and Due Process.**

6         In Ground One, Petitioner contends that the Superior Court violated the Double Jeopardy and

7    Due Process Clauses when it used his prior burglary conviction(s)[6] both as an element of the charged

8    crime[7] and as a prior strike conviction under the Three Strikes law.  The Double Jeopardy  Clause of

9    the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees

10   that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

11   U.S. Const. amend V.   The Double Jeopardy Clause protects against a second prosecution, and

12   multiple punishments, for the same offense.  Witte v United States, 515 U.S. 389, 396, 115 S.Ct.

13   2199 (1995); United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir. 1995).  The Due Process

14   Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or

15   property without due process of law.

16        Petitioner's contention that dual use of his prior burglary conviction violated the Double

17   Jeopardy and Due Process Clauses is without merit, for two reasons.  First, neither Penal Code

18   § 666's  prior conviction requirement nor proof of a prior "strike" conviction under Penal Code

19   _____

20        [6] It is unclear whether Petitioner contends that more than one of his prior burglary convictions
     were used to elevate his petty theft to a felony and to invoke the Three Strikes sentencing provisions.

21   It is a distinction without a difference in any event, because only one prior conviction is required to come
     within the ambit of Penal Code § 666.

22        [7] California Penal Code § 666 provides:

23        Every person who, having been convicted of petty theft, grand theft, auto theft under

24        Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation
          of Section 496 and having served a term therefor in any penal institution or having

25        been imprisoned therein as a condition of probation for that offense, is subsequently
          convicted of petty theft, then the person convicted of that subsequent offense is

26        punishable by imprisonment in the county jail not exceeding one year, or in the state
          prison.

27

28   The version of Penal Code § 666 in effect at the time of Petitioner's 1995 offense was identical to the
     foregoing provision, except that the word "petit" was used in the place of the word "petty."

1   § 1170.12(c)(2)(A), are elements of the crime of petty theft for which Petitioner was convicted.

2   Second, the use of prior convictions to enhance punishments for later offenses does not constitute

3   new jeopardy or multiple punishments.

4       1.   Prior Convictions Are Not Elements Of The Charged Offense.

5       Petitioner first contends that the Superior Court used his prior burglary conviction as an

6   element of the charged crime of "petty theft with a prior."  This contention is based on the flawed

7   premise that the prior conviction, either as a strike or as a predicate to petty theft with a prior, is an

8   element of the charged crime.  Petitioner is incorrect.

9       First, the predicate conviction for petty theft with a prior is not an element of the offense.  In

10  People v.  Bouzas, 53 Cal.3d 467, 478 (1991), the California Supreme Court held that a prior

11  conviction is not an element of petty theft (Cal. Pen. Code § 484) with a prior conviction (Cal. Pen.

12  Code § 666), because petty theft does not require proof of a prior conviction.  Id. at 478.   Rather,

13  § 666 merely "establishes a penalty, not a substantive 'offense'."  Id.  The Bouzas court reasoned that

14  § 666 "is structured to *enhance* the punishment for violation of other defined crimes and *not to*

15  *define an offense in the first instance* .... [A] charge under section 666 merely puts a defendant on

16  notice that if he is convicted of the substantive offense (of violating section 484) and if the prior

17  conviction and incarceration allegation of section 666 is admitted or found true, he faces enhanced

18  punishment at the time of sentencing."  Id. at pp. 478-80 (emphasis supplied); see People v. Tardy,

19  2 Cal. App. 4th 784, 787 (2003) ("... section 666 does not establish a separate, substantive crime of

20  petty theft with a prior conviction [.]").  Thus, under Bouzas, Penal Code § 666 is a *sentencing*

21  *statute* rather than a substantive offense, and its "prior conviction" requirement is not an element of

22  the crime.  See also, United States v. Corona-Sanchez, 291 F.3d 1201, 1206 ("Section 666 is a pure

23  sentencing statute.").

24      As a matter of clearly established federal law, the United States Supreme Court has regularly

25  deferred to state court interpretations of state statutes.  "A State's highest court is the final judicial

26  arbiter of the meaning of state statutes."  Gurley v. Rhoden, 421 U.S. 200, 208, 95 S.Ct. 1605 (1975).

27  When a state court has made its own definitive determination as to the meaning of a state statute,

28  federal courts give this finding great weight in determining the natural effect of a statute, and if it is

1   consistent with the statute's reasonable interpretation, it will be deemed conclusive.  Id.

2        Here, the California Supreme Court's construction of Penal Code § 666 is reasonable and,

3   therefore, conclusive: the prior conviction used to elevate the petty theft to a felony is a penalty

4   enhancement, not an element of the offense.  Bouzas, 53 Cal.3d at 478-480.

5        Similarly, prior strike convictions are not elements of the offense for purposes of double

6   jeopardy.  Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S.Ct. 1219 (1998) (declining

7   to adopt a rule that a recidivism enhancement significantly increasing the sentence would be

8   considered an element of the offense).  This is consistent with a legal tradition that has distinguished

9   between facts that are elements of crimes and facts that are relevant only to sentencing.  See, e.g.,

10  Almendarez-Torres, 523 U.S. at 228; Witte, 515 U.S. at 399; United States v. Watts, 519 U.S. 148,

11  154, 117 S.Ct. 633 (1997) (per curiam); United States v. Dunnigan, 507 U.S. 87, 97, 113 S.Ct. 1111

12  (1993).

13       Although subsequent Supreme Court cases have questioned Almendarez-Torres' conclusion

14  that sentence enhancements are not elements of the offense in the context of the Sixth Amendment's

15  guarantee of a defendant's right to a jury trial on all elements of an offense, see, e.g., Apprendi v.

16  New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), and Blakely v. Washington, 542 U.S. 296, 124

17  S.Ct. 2531 (2004), this same concern has not been expressed in the context of the Double Jeopardy

18  Clause.

19       Moreover, even for Sixth Amendment purposes, the United States Supreme Court has

20  continued to recognize an exception for recidivist statutes.  Apprendi, 530 U.S. at 490 ("*Other than*

21  *the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed

22  statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis

23  supplied); Blakely, 124 S.Ct. at 2536 (quoting Apprendi).[8]

24  _____

25       [8]Neither Apprendi nor Blakely has been determined by the Supreme Court to have retroactive
    effect to cases on collateral review.   U.S. v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir.
26  2002)(Apprendi); Cooper-Smith v. Palmateer, 397 F.3d 1236, 1246 (9th Cir. 2005)(same); Schardt v.
    Payne, 414 F.3d 1025, 1036 (9th Cir. 2005)(Blakely). Petitioner's appeal became final on December 10,
27  2001, after the Supreme Court's decision in Apprendi but before its decision in Blakely.  However, as
    discussed above, neither case addresses the double jeopardy implications of prior convictions.
28  Therefore, in that regard, Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998) and
    Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673 (1983) remain the applicable law, and the focus, as
    discussed infra in subpart b, is on whether the California legislature intended a double punishment, not

1        2. <u>Dual Use Does Not Violate Double Jeopardy Or Due Process</u>.

2        Petitioner contends that the Superior Court committed constitutional error when it used  the

3   same prior burglary conviction as a strike, after using it to elevate the petty theft to a felony.

4   Petitioner asserts that the increased punishment under the Three Strikes law "becomes an element of

5   the public offense or crime committed " and thus "using the same prior conviction to satisfy an

6   'element' more than once results in multiple punishment based on the same fact."  (Petitioner's

7   Memorandum of Points and Authorities, Doc. 3, pp. 3-4).

8        However, because the Court has already concluded that neither the predicate prior

9   convictions for enhancing petty theft nor the prior "strike" convictions are elements of the offense

10  but rather are sentencing factors, the real issue is whether the use of the same prior conviction for

11  multiple enhancements offends the Double Jeopardy Clause.  Clearly established federal law requires

12  this question to be answered in the negative.

13       The United States Supreme Court has held double jeopardy implications inapplicable to

14  sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for

15  an offense.  <u>Monge v. California</u>, 524 U.S. 721, 726, 118 S.Ct. 2246 (1998) (citing <u>Nichols v. United</u>

16  <u>States</u>, 511 U.S. 738, 747, 114 S.Ct 1921 (1994) (noting that repeat-offender laws "'penaliz[e] only

17  the last offense committed by the defendant'")).   The United States Supreme Court has held that

18  recidivist laws do not violate double jeopardy because "the enhanced punishment imposed for the

19  [present] offense 'is not to be viewed as . . . . [an] additional penalty for the earlier crimes,' but

20  instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense

21  because a repetitive one.'" <u>Witte</u>, 515 U.S. at 400 (quoting <u>Gryger v. Burke</u>, 334 U.S. 728, 732, 68

22  S.Ct. 1256 (1948)); <u>see</u> <u>United States v. Kaluna</u>, 192 F.3d 1188, 1198-99 (9th Cir. 1999)(en banc),

23  quoting <u>Witte</u>.

24       As discussed in the previous section, the prior convictions, whether used as predicate

25  "strikes" to invoke California's Three Strikes law or to elevate the petty theft to a felony, are

26  sentencing factors, not elements of the substantive criminal offense.  Thus, Petitioner was not placed

27

28  on whether California classifies the prior convictions as "elements of the offense" rather than "sentence
    enhancements." For the purpose of this discussion, the latter debate is a "red herring."

1   in double jeopardy for an *offense*, but was instead *punished* based on his *status* as a repeat offender.

2   Monge v. California, 524 U.S. at 726.  The fact that Petitioner's prior burglary conviction was used

3   *both* to enhance his current conviction *and* to trigger the Three Strikes law does not violate the

4   Double Jeopardy Clause.  See id.; Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179 (1895)

5   (under a recidivist statute, "the accused is not again punished for the first offense [because] 'the

6   punishment is for the last offense committed, and it is rendered more severe in consequence of the

7   situation into which the party had previously brought himself'").

8         Therefore, far from being contrary to or an unreasonable interpretation of this clearly

9   established federal law, the 5th DCA's decision is consistent with the relevant holdings of the

10   Supreme Court.  In its decision, the 5th DCA indicated in a footnote that, had it addressed the issue

11   on the merits, it would have rejected the argument based on People v. White Eagle, 48 Cal. App. 4th

12   1511, 1516, 1518 (1996), which confronted this precise issue.  In White Eagle, the 5th DCA rejected

13   the argument Petitioner now makes regarding Penal Code § 666, and held that the same conviction

14   may be used to convert a petty theft to a felony under § 666, to impose a doubled term for the present

15   offense under Pen. Code § 667(e), and to impose a prior prison term enhancement under Pen. Code §

16   667.5 (b)).  Id.; see People v. Nguyen, 54 Cal. App. 4th 705, 711, 713 (1997).

17         California has upheld various other dual uses of prior convictions in the context of the Three

18   Strikes law, e.g., as a strike and to impose a serious felony enhancement (People v. Acosta, 29 Cal.

19   4th 105, 128 (2002)); as an element of the charged crime and to double punishment for that crime

20   under the Three Strikes law (People v. Garcia, 25 Cal. 4th 744, 756 (2001)); and to trigger application

21   of habitual sex offender law and the Three Strikes law (People v. Johnson, 96 Cal. App. 4th 188, 203

22   (2002)).   Thus, the state court decision was neither contrary to nor an unreasonable application of

23   clearly established Supreme Court jurisprudence.

24         In support, however, of his contention that the state court decision contradicted clearly

25   established federal law, Petitioner relies on Blockburger v. United States, 284 U.S. 299, 52 S.Ct.

26   180 (1932), and Missouri v. Hunter, 459 U.S. 359, 103 S. Ct. 673 (1983).  (Doc. 3, Memorandum of

27   Points and Authorities, p. 4).  Petitioner's reliance on those cases is misplaced because neither

28   supports his position.

In <u>Blockburger</u>, the United States Supreme Court considered whether a defendant's conviction, and resulting consecutive sentences, for the sale of morphine not in its original package and the sale of that same morphine without a written order of the purchaser, constitute but a single offense for which only a single penalty may be imposed.  <u>Id.</u> at 301.

Rejecting the defendant's argument, the Supreme Court noted that each offense for which the defendant was convicted required proof of a different element:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

<u>Blockburger</u>, 284 U.S. at 303.  The Supreme Court observed that "a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."  <u>Id.</u> at 304.  Applying that standard, the Supreme Court held that "although both sections were violated by the one sale, two offenses were committed."  <u>Id.</u>

From the foregoing discussion, it is obvious that <u>Blockburger</u> is completely inapposite to the instant case.  Petitioner's situation is a variant of the *converse* of <u>Blockburger</u>:  Petitioner did not suffer multiple convictions arising out of a single transaction; rather, he suffered a single trial, conviction, and punishment that utilized multiple prior convictions.  Hence, the constitutional concerns expressed in <u>Blockburger</u> are not present here.

Nor does <u>Missouri v. Hunter</u>, 459 U.S. 359, avail Petitioner.  In <u>Missouri v. Hunter</u>, the defendant was convicted of first-degree robbery as well as a separate Missouri offense of "armed criminal action."  On state review, the Missouri appellate courts reversed the convictions on the grounds that the two sentences violated the Double Jeopardy Clause's protection against multiple punishments for the same offense.  <u>Id.</u> at 363.  Characterizing the Missouri courts' holdings as a "misreading" of the Double Jeopardy Clause, the Supreme Court reversed, explaining that the Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  <u>Id.</u> at 366.

In <u>Missouri v. Hunter</u>, the Supreme Court reiterated its long-held position that where the legislature *clearly intended* "to impose multiple punishments, imposition of such sentences does not

1   violate the Constitution." Id. at 368, quoting Albernaz v. United States,450 U.S. 333, 344, 101 S. Ct.

2   1137 (1981).  "[S]imply because two criminal statutes may be construed to proscribe the same

3   conduct under the Blockburger test does not mean that the Double Jeopardy Clause precludes the

4   imposition, in a single trial, of cumulative punishments pursuant to those statutes." Id. at 368.  Thus,

5   the Supreme Court concluded, where the legislature has made its intent clear, the legislature, not the

6   courts, "prescribe the scope of punishments." Id.

7        Here, the California legislature has indicated its intent to authorize multiple punishments in

8   this context.  California Penal Code § 1170.12 (c)(2)(A) provides that persons with two prior violent

9   or serious felony convictions shall be subject to the specified longer sentences, including, as in this

10  case, a sentence of 25 years to life.  Subsection (c) prefaces subdivision (c)(2)(A) with the caveat that

11  it applies "*in addition to any other enhancements or punishment provisions which may apply....*"

12  (Emphasis supplied).   Subsection (d)(1) further provides that, "*Notwithstanding any other provision*

13  *of law*, this section shall be applied in every case in which a defendant has a prior felony conviction

14  as defined in this section." Cal. Pen. Code § 1170.12(d)(1) (emphasis supplied).

15       The clarity of this language prompted the California Supreme Court to hold that "On its face,

16  the plain and unambiguous language of the Three Strikes law discloses an intent to impose the

17  enhanced...sentence despite a possible 'dual use' of defendant's prior conviction." People v. Garcia,

18  25 Cal.4th 744, 757 (2001).  And, as mentioned, other California courts have followed this lead in

19  affirming multiple uses of prior convictions within the specific context of petty theft with a prior

20  conviction. E.g., White Eagle, 48 Cal. App. 4th at 1516-1518, as well as in other "multiple use"

21  contexts.  People v. Cartwright, 39 Cal.App. 4th 1123, 1127-39 (1995)(use of prior conviction for

22  "strike" and for five-year sentence enhancement); People v. Ramirez, 33 Cal.App. 4th 559, 566

23  (1995)(same); People v. Garcia, 25 Cal. 4th 744, 756 (2001) (prior conviction used as "strike" and

24  element of offense).  Because in California it is clear that multiple punishments are contemplated for

25  the same prior conviction, Missouri v. Hunter, far from supporting Petitioner's position, actually

26  supports the contrary conclusion that there is no Double Jeopardy impediment in Petitioner's

27  conviction and sentence.

28  ///

1    Based on the foregoing analysis, Petitioner's claim that the dual use of his conviction "to

2    twice or thrice increase punishment in the same proceeding" violated the Double Jeopardy and Due

3    Process Clauses is without merit.

4    The denial of Petitioner's Ground One claim was not unreasonable under the AEDPA, and

5    the 5th DCA's "footnote three reason" why it would have rejected the claim if it had considered the

6    claim on the merits, was not contrary to or an unreasonable application of clearly established

7    Supreme Court authority.  Thus, Petitioner's claim should be denied.

8          **Ground Two.**      **Petitioner's sentence of 25 years to life for petty theft**

9          **violates the prohibition against cruel and unusual**

10         **punishment under the Eighth Amendment to the United**
      **States Constitution, even though he was previously**

11         **convicted of three residential burglaries.**

12   Petitioner contends that his sentence of 25 years to life violates the federal prohibition against

13   cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution.

14   (Doc. 1, p. 21).  This contention is without merit.

15   In two companion cases, Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003) and Ewing

16   v. California, 538 U.S. 11, 123 S. Ct.1179 (2003), the Supreme Court provided guidance in applying

17   Eighth Amendment jurisprudence to California's Three Strikes law in habeas cases.  In Ewing, the

18   Supreme Court explained that while the constitutional principle of proportionality between crime and

19   sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict

20   proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

21   'grossly disproportionate' to the crime."  Ewing, 538 U.S. at 23 (citations omitted).  The gross

22   disproportionality principle applies "only in the 'exceedingly rare' and 'extreme' case."  Andrade,

23   538 U.S. at 73 (citations omitted).

24   Applying these standards, in Ewing, the Supreme Court rejected the defendant's claim that a

25   sentence of 25 years to life for stealing nearly $1,200 worth of golf clubs was "grossly

26   disproportionate" to his crime where the defendant had previously been convicted of three residential

27   burglaries and a robbery.  Ewing, 538 U.S. at 18.  Similarly, in Andrade the Court reversed the Ninth

28   Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years to life sentences

1   for two petty theft convictions for stealing five videotapes worth less than $85, and four video tapes

2   worth less than $70, respectively.

3        In Andrade, the Supreme Court concluded that the state court decision upholding the

4   sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases.

5   Andrade, 538 U.S. at 73-74.  The Supreme Court also held that the state appellate court did not

6   "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle

7   "gives legislatures broad discretion to fashion a sentence that fits within the scope of the

8   proportionality principle–the 'precise contours' of which 'are unclear.'"  Id., 538 U.S. at 75-77.

9   According to the Supreme Court, "it was not objectively unreasonable for the California Court of

10  Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence."  Id.   In

11  addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's

12  habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263, 100

13  S. Ct. 1133 (1980), and a life sentence *without the possibility of parole* for possession of cocaine.

14  Harmelin v. Michigan, 501 U.S. 957, 111 S. Ct. 2680 (1991).

15       In 2004, the Ninth Circuit held that a Three Strikes sentence of 25 years to life for a third

16  offense of shoplifting a $199 VCR was cruel and unusual punishment.  Ramirez v. Castro, 365 F.3d

17  755 (9th Cir. 2004).  The Ramirez petitioner's criminal history consisted of two convictions for

18  second-degree robbery as a result of a single guilty plea entered before the Three Strikes law was

19  enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner

20  in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666).

21  The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike

22  either of them, and sentenced the petitioner to 25 years to life. Id. at 756. Prior to his third-strike

23  sentence, the petitioner had never been sentenced to prison, and had been incarcerated only one time

24  in the county jail. In finding the sentence unconstitutional, the Ninth Circuit determined that the state

25  court unreasonably applied the gross proportionality principle to the "unique facts of Ramirez's

26  case." Id. at 774.

27       In another 2004 case, the Ninth Circuit held that a Three Strikes sentence of 25 years to life

28  for a third "wobbler" offense did not constitute cruel and unusual punishment, because the petitioner

1    had a lengthy criminal history, had been incarcerated several times, and the strikes used to enhance

2    the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082, 1086

3    (9th Cir. 2004).

4           In light of this jurisprudence, the Court finds that Petitioner's sentence is not grossly

5    disproportionate to the offense and therefore the Court must conclude that the sentence imposed in

6    this case and affirmed by the state courts did not offend the Eighth Amendment.   Petitioner's crime

7    is the same as the crime in Andrade, which upheld two consecutive 25 years to life sentences for

8    stealing videotapes valued at less than $200, after convictions on two counts of petty theft.  Here,

9    Petitioner received a 25 years to life sentence for stealing clothes valued at $231, after a conviction

10   on one count of petty theft.  As in Andrade, Petitioner was no first-time offender, and his sentence

11   does not preclude parole. [9]

12          Beyond the instant offense, however,  the Court must consider Petitioner's prior history,

13   which is more extensive than in Ramirez, and his lengthy incarceration in state prison. As the

14   Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we must place on the

15   scales not only his current felony, but also his long history of felony recidivism." Ewing, 538 U.S. at

16   29.

17          The 5th DCA summarized Petitioner's criminal history as follows:

18          Petitioner's criminal history consists of several burglary convictions in Alameda
            County.  The first, for first degree burglary, occurred in 1986 shortly after he had
19          turned 22 years old.  He was convicted again of first degree burglary later the same
            year, and of second degree burglary in 1987.  This time he was sentenced to a prison
20          term of 12 years.  He was paroled in March of 1994, five months before he committed
            the present offense.  In short, the record shows that [Petitioner] was in jail or prison for
21          much of the nine-year period preceding his arrest in this case, and that he took
            advantage of the times when he was not in custody to commit additional crimes.

22   (Doc. 20, Exh. 14 at 7-8).  After reviewing Petitioner's criminal history, the 5th DCA referred to

23   People v. Cooper, 43 Cal.App. 4th 815 (1996) (analyzing the Three Strikes law with respect to federal

24   and state prohibitions against cruel and/or unusual punishment), and found that the Superior Court's

25

26   _____

27       [9]  California Penal Code § 3041 provides that parole must be granted unless certain criteria, not
     present in this case, are met. § 3041 further provides that the California Board of Prison Terms must
28   grant parole unless it determines that public safety requires a lengthier period of incarceration for the
     individual because of the gravity of the offense underlying the conviction. In re Rosenkrantz, 29 Cal.
     4th 616, 654 (2002).

1  application of the Three Strikes law was constitutional. (Doc. 20, Exh. 14 at 7-9).

2          The 5th DCA's summary of Petitioner's criminal history is consistent with the record before

3  the Court, which shows that prior to the instant offense, Petitioner was convicted of first degree

4  residential burglary in January and June 1986, second degree burglary in March 1987, and another

5  first degree burglary in January 1988.  (1 CT 123, 208, 225, 229; 2 CT 73; 1 SCT 5-6, 11-12).  As

6  Respondent notes, Petitioner was on parole  when he committed the instant offense. (1 CT 122-24;

7  2 CT 73, 124; 1 SCT 11-12).

8          Given Petitioner's crime, criminal history of multiple burglaries, and sentence, his case is not

9  "the rare case in which a threshold comparison of the crime committed and the sentence imposed

10  leads to an inference of gross proportionality." Harmelin, 501 U.S. at 1005.  Petitioner's prior

11  criminal history is unlike that of Ramirez, and does not warrant habeas relief. As was true in Ewing,

12  Petitioner's sentence of 25 years to life is justified by the State's public-safety interest in

13  incapacitating and deterring recidivist felons, and is amply supported by Petitioner's numerous

14  convictions documenting his disregard for the law.  Ewing, 538 U.S. at 29-30.

15          In sum, Petitioner's sentence, when compared with his underlying offenses, does not violate

16  the Eighth Amendment's prohibition on cruel and unusual punishment.  Based on the foregoing, the

17  Court concludes that the state court's rejection of Petitioner's claim was not contrary to or an

18  unreasonable application of clearly established United States Supreme Court precedent. Accordingly,

19  this claim must be denied.

20                              **RECOMMENDATION**

21          Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus

22  (Doc. 1), be DENIED.

23          This Report and Recommendation is submitted to the United States District Court Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

25  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

26  twenty (20) days after being served with a copy of this Report and Recommendation, any party may

27  file written objections with the Court and serve a copy on all parties.  Such a document should be

28  captioned "Objections to Magistrate Judge's Report and Recommendation."  Replies to the

Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    October 20, 2005**              **/s/ Theresa A. Goldner**
j6eb3d                                    UNITED STATES MAGISTRATE JUDGE